IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re BV MANAGEMENT, LLC,                           )
                                                    )
       Debtor.                                      )
                                                    )
_____                 )       1:25-cv-1325 (LMB/LRV)
                                                    )
JANET M. MEIBURGER,                                 )       Bankruptcy Case No. 22-10662-BFK
CHAPTER 7 TRUSTEE,                                  )       Chapter 7
                                                    )
and                                                 )
                                                    )       Appeal from the United States
MARK GROSS,                                         )       Bankruptcy Court for the Eastern
                                                    )       District of Virginia, Alexandria Division
       Appellants,                                  )
                                                    )
    v.                                             )
                                                    )
THE FRED GUMBINNER LIVING                           )
TRUST c/o FRED GUMBINNER,                            )
TRUSTEE,                                            )
                                                    )
and                                                 )
                                                    )
G2 BVM, LLC,                                        )
                                                    )
       Appellees.                                   )

## ORDER

Before the Court is Trustee Janet M. Meiburger's (appointed as "Trustee") and creditor

Mark Gross's ("Gross") (collectively, "appellants") appeal from a decision of the bankruptcy

court in a Chapter 7 bankruptcy proceeding. The core issue in this appeal is whether the

bankruptcy court erred in allowing The Fred Gumbinner Living Trust (the "Gumbinner Trust")

and G2 BVM, LLC ("G2 BVM") (collectively, "appellees") to file amended proofs of claims

after the deadline for filing proofs of claims. Although appellants requested oral argument, the

Court finds that oral argument will not aid the decisional process, and the appeal will be decided

on the papers submitted. For the reasons set forth below, the decision of the bankruptcy court will be affirmed.

## I. BACKGROUND

The Court adopts the following facts from the bankruptcy court's Memorandum Opinion and Order Sustaining Objection to Trustee's Final Report, which facts are not challenged on appeal. See generally, Case 22-10662-BFK, [Dkt. No. 541] (hereinafter, "Mem. Op.") at 1-12. On May 26, 2022, BV Management, LLC ("BV Management" or the "Debtor") filed a Voluntary Petition under Subchapter V of Chapter 11 in the United States Bankruptcy Court for the Eastern District of Virginia. Id. at ¶ 1. The Debtor "was in the business of purchasing goods from wholesalers, retailers, and manufacturers—such as Costco, Sam's Club, and Walmart—for resale on Amazon Storefronts[.]" Id. at ¶ 2. The Debtor borrowed funds in the forms of "advances, credit card lines of credit, and lines of credit to finance its operations." Id. On July 27, 2022, the bankruptcy court entered an order converting the case to one under Chapter 7, id. at ¶ 16, and the Trustee was appointed on July 28, 2022, id. at ¶ 18. On August 26, 2022, the Debtor filed its Schedules, which listed the value of the Debtor's receivables as $1,200,000.00 and the total value of all of the Debtor's assets as $2,039,000.00. Id. at ¶ 22; see also Case 22-10662-BFK, [Dkt. No. 120] at 1-7.

On September 4, 2022, the Court issued a Notice of Need to File Proof of Claim, setting December 5, 2022 as the deadline by which any claims had to be filed. Mem. Op. at ¶ 24. On December 2, 2022, G2 BVM timely filed Proof of Claim 8-1, in the amount of $2,979,209.00, which it described as being secured by a "blanket lien on all assets of the Debtor." Id. at ¶ 30; see also [Dkt. No. 8-1]. Appellee attached a Note, Security Agreement, and a UCC-1 Financing Statement to support Claim 8-1. Mem. Op. at ¶ 30. The claim stated that the value of the

collateral, and the amount of the claim that was unsecured were "unknown." Id. On that same

day, the other appellee, the Gumbinner Trust, timely filed Proof of Claim 9-1 in the amount of

$342,143.00. Id. at ¶ 31; see also [Dkt. No. 8-2]. The claim was filed as a secured claim with a

lien on "Amazon accounts receivable," and attached to it were copies of a Note and a UCC-1

Financing Statement. Mem. Op. at ¶ 31. The value of the collateral was left blank, as was the

amount of any unsecured portion of the claim. Id.

On May 5, 2025, the Trustee filed the Trustee's Final Report,[1] id. at ¶ 32, which treated

Claims 8-1 and 9-1 as fully secured, id. at ¶ 35, and was served on all creditors on the mailing

matrix. Case 22-10662-BFK, [Dkt. No. 529]. The creditors had 21 days to file any objections to

the Trustee's Final Report, or by May 27, 2025, and a hearing on the Trustee's Final Report was

scheduled for June 10, 2025. Id. On May 27, 2025, the final day to object to the Trustee's Final

Report, appellees filed an Objection stating that "there are no material amounts due from

Amazon," and that Amazon acknowledged that it owed only $33,000.00. Mem. Op. at ¶ 36.

On June 9, 2025, the day before the bankruptcy court's hearing on the Trustee's Final

Report, appellees filed Amended Proofs of Claim. Id. at ¶ 37. G2 BVM's Amended Claim 8-2

described the value of its collateral as only $35,000.00 and reported an unsecured deficiency

claim in the amount of $2,944,209.00. Id. at ¶ 38. The Gumbinner Trust's Amended Claim 9-3

stated that the entire claim was unsecured. Id. at ¶ 39.

On July 15, 2025, after hearing oral argument on the matter, the bankruptcy court issued

a Memorandum Decision and Order Sustaining Objection to Trustee's Final Report

---

[1] A Trustee's Final Report is submitted first to the U.S. Trustee's Office for review, and once the U.S. Trustee's Office approves the Trustee's Final Report, it is filed with the bankruptcy court. The Trustee then prepares a Notice of Trustee's Final Report and Applications for Compensation and Deadline to Object, files it with the bankruptcy court, and serves it on all creditors in the mailing matrix. See [Dkt. No. 6] at ¶ 15.

("Memorandum Decision"). <u>See generally</u>, <u>id.</u> In that Memorandum Decision, the bankruptcy court allowed the amended claims filed by G2 BVM and the Gumbinner Trust, Claims 8-2 and 9-3, respectively, to be filed because they "ar[o]se out of the same transaction or occurrence as the original [ ] Claims—the monies loaned to the Debtor[,]" and therefore were not new claims. <u>Id.</u> at 7-8.

The bankruptcy court further held that allowing the amended claims would not be unduly prejudicial to the administration of the bankruptcy estate. <u>Id.</u> at 8. In making this finding, the bankruptcy court emphasized that "there is no deadline in the [Bankruptcy] Code or in the Bankruptcy Rules to file amendments to proofs of claim[,]" and that there was no "legally cognizable prejudice" in allowing the amended claims because the Trustee's Final Report had not been approved. <u>Id.</u> at 9-10. Accordingly, because the Trustee's Final Report did not include the amended claims, the bankruptcy court sustained G2 BVM and the Gumbinner Trust's objections, and declined to approve the report.

On August 7, 2025, the Trustee filed a Notice of Appeal, [Dkt. No. 1], which has been fully briefed. The core issue is whether the bankruptcy court erred in allowing appellees' amended claims.

## II. DISCUSSION

### A. <u>Standard of Review</u>

A district court reviewing a decision of a bankruptcy court "applies the standards of review generally applied in federal courts of appeal." <u>United States v. Copley</u>, 591 B.R. 263, 268 (E.D. Va. 2018). "Decisions committed to the bankruptcy court's discretion are reviewed for abuse of discretion." <u>Towd Point Master Funding Tr. 2019-PM7 v. Pro. Foreclosure Corp. of Virginia</u>, No. 1:24-CV-779 (RDA/WEF), 2025 WL 918158, at *3 (E.D. Va. Mar. 25, 2025) (citing <u>Robbins v. Robbins (In re Robbins)</u>, 964 F.2d 342, 345 (4th Cir. 1992)). "A bankruptcy

4

court's findings of fact 'shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witness.'" Id. (quoting Fed. R. Bankr. P. 8013). "A bankruptcy court's conclusions of law are subject to de novo review on appeal." Id. (citing In re Meredith, 527 F.3d 372, 375 (4th Cir. 2008); In re Phinney, 405 B.R. 170, 175 (E.D. Va. 2009)). "Where there are issues that present both questions of law and fact, factual inquiries are reviewed by a clearly erroneous standard, and the legal conclusions derived therefrom are reviewed de novo." Id. (citing Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond, 80 F.3d 895, 904 (4th Cir. 1996)).

Here, contrary to appellants' assertion, the applicable standard of review is abuse of discretion because the core issue in this appeal is whether the bankruptcy court should have allowed appellees' amended claims.[2] See Roberson, 188 B.R. at 365 ("[T]he bankruptcy court's determination as to whether to grant leave to amend a proof of claim is a matter wholly within its discretion. Thus, this Court will not disturb its decision on appeal other than for an abuse of discretion.") (citing In re Davis, 936 F.2d 771, 775 (4th Cir. 1991)). "An abuse of discretion can occur if (1) the court fails to 'actually . . . exercise discretion, deciding instead as if by general rule, or even arbitrarily'; (2) the court fails to take relevant facts 'constraining its exercise' of discretion into account; or (3) its decision is based on erroneous conclusions of law or fact." Id. (quoting James v. Jacobson, 6 F.3d 233, 239 (4th Cir. 1993)).

---

[2] Appellants, in their reply brief, argue that the abuse of discretion standard does not apply because the bankruptcy court applied "incorrect legal principles in reaching its conclusion[,]" and as a result, the court "did not exercise discretion in allowing the claim amendments." [Dkt. No. 9] at 2, 7-8. This argument is unavailing. Federal caselaw makes clear that where a bankruptcy court's decisions are committed to its discretion, a district court must review the decision on appeal for an abuse of discretion. See United States v. Roberson, 188 B.R. 364, 365 (D. Md. 1995). Here, the bankruptcy court weighed all relevant factors and considerations before exercising its discretion to allow the claims at issue. Appellants' disagreement with the ultimate decision does not merit de novo review.

## B. Relation Back

Appellants first argue that the bankruptcy court erred in holding that Claims 8-1 and 9-3 related back to the original claims.[3] [Dkt. No. 6] at 9. In finding that Claims 8-1 and 9-3 related back to the appellees' original claims, the bankruptcy court applied Fed. R. Civ. P. 15(c)'s relation-back standard, which states that:

> "An amendment to a pleading relates back to the date of the original pleading when: . . . (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]"
>
> Fed. R. Civ. P. 15(c)(1)(B); see also In re Ayres-Haley, No. 07-10314-SSM, 2008 WL 163580, at *2 (Bankr. E.D. Va. Jan. 16, 2008).

The bankruptcy court also relied on caselaw from other bankruptcy courts across the country, which have found that "[u]nsecured deficiency claims are generally considered to be amended, and not new, claims because they arise out of the same transaction or occurrence as the secured claims." Mem. Op. at 8 (citing In re Baker, No. 11-32225-BKC-PGH, 2015 WL 13049756, at *4 (Bankr. S.D. Fla. May 5, 2015) ("[C]ourts [that] have considered whether, in the context of a chapter 7 case, a purported amendment, filed after the bar date, to add an unsecured deficiency claim is an entirely new claim rather than a permissible amendment to a timely-filed claim . . . have generally found that such an amendment is indeed a true amendment to the original claim and thus relates back to the date of the filing of the original claim."); In re Channakhon, 465 B.R.

---

[3] Whether Claims 8-1 and 9-3 related back to the original claims is critical to the approval of the Trustee's Final Report. As explained by the bankruptcy court, "[i]n Chapter 7 cases, timely-filed claims are entitled to be paid ahead of late-filed claims." Mem. Op. at 7 (citing 11 U.S.C. §§ 726(a)(2)(A), (a)(3)). "Where the distribution to timely filed claims is less than 100%, any untimely claims are not entitled to a distribution." Id. Here, if the amended claims at issue are treated as "new claims, they are not timely and are not entitled to a distribution in this case." Id.

6

132, 142 (Bankr. S.D. Ohio 2012); In re Spurling, 391 B.R. 783, 786 (Bankr. E.D. Tenn. 2008)).[4] Because the amended claims arose out of the same transaction or occurrence as the original claims—i.e., "the monies loaned to the Debtor"—the bankruptcy court did not err in finding that Claims 8-1 and 9-3 are amended, and not new claims. Id.

Appellants argue that the bankruptcy court erred in finding that the appellees' amended claims related back to their original claims because it did not address a "requisite notice" requirement. See [Dkt. No. 6] at 12. In making this argument, appellants do not dispute the validity of the cases upon which the bankruptcy court relied, but only assert that there are "better reasoned decisions[.]" [Dkt. No. 6] at 10. Specifically, appellants rely on United States v. Oscher (In re J.H. Inv. Servs.), 452 Fed. Appx. 858 (11th Cir. 2011) and In re Matthews, 313 B.R. 489 (Bankr. M.D. Fla. 2004) to assert that "[i]n applying the 'conduct, transaction or occurrence' language of Rule 15(c) to the amendment of a claim from secured to unsecured, the better reasoned decisions focus on whether the original, secured claim provided notice that an unsecured claim . . . was being asserted or preserved." Id. at 9-13. Neither case helps the appellants because the facts in those cases were materially different from those in this appeal.

In Oscher, the IRS originally filed a secured claim for $46 million; when the Trustee filed the Chapter 11 Plan, the IRS objected, asserting that it should participate in the distribution to

---

[4] In their Reply Brief, appellants argue that In re Spurling supports their argument that "relation back requires that the [a]ppellees' original, secured claims must have included notice of an intent to participate in the distribution to unsecured creditors." [Dkt. No. 9] at 3. That decision does not support the appellants' position because the bankruptcy court clearly held that "a secured creditor may amend its proof of claim to show an unsecured deficiency after the claims bar date has run. No reservation of a right to do so is required in this circuit[,]" and also held that "the very fact that a secured creditor files any claim at all in a Chapter 7 case is a statement that it wishes to share in the estate as an unsecured creditor." 391 B.R. at 789. Appellants acknowledge this holding, but merely assert that the Spurling court "based its decision on [an] incorrect belief." [Dkt. No. 9] at 4.

unsecured creditors because its lien was under-secured. 452 Fed. Appx. 858 at 860. The 11th

Circuit rejected the IRS's argument, holding that the fully secured claim filed by the IRS did not

contain an implied unsecured deficiency; however, the court ultimately did not reach the

question at issue in this appeal—whether an amendment filed after the claims bar date should be

permitted—see id. at 862-63, because the issue was not raised by the parties. In a footnote, the

Oscher court explained that "[a]fter the bankruptcy court concluded that [the original claim] did

not assert an unsecured priority claim, the IRS filed [an amended claim]. . . . Unfortunately, . . .

the IRS has not raised the disallowance of [the amended claim] on appeal." Id. at 863 n.3.

Appellants concede, as they must, that the 11th Circuit failed to consider this issue. [Dkt. No. 6]

at 10. Moreover, it appears that if the issue raised in this appeal had been raised in Oscher, the

11th Circuit would have allowed the amended claim.[5] [Dkt. No. 6] at 10.

Matthews is also distinguishable from the facts at hand because in that case, the creditor

attempted to file an unsecured claim to amend its original, fully secured claim more than one

year after confirmation of a Chapter 13 plan, when distributions had already been made pursuant

to that plan. 313 B.R. 489 at 496. By contrast, the amended claims at issue in this appeal were

filed before the Trustee's Final Report had been approved, and the bankruptcy court explicitly

acknowledged that it "would view the matter differently" if the appellees had "waited until after

the Trustee's Final Report was approved, and the funds been distributed to the claimants[.]"

Mem. Op. at 9.

Appellants also rely on the Matthews court finding that:

---

[5] Specifically, the Oscher court recognized that "an undersecured creditor who initially fails to note a deficiency claim may seek leave to amend its proof of claim[,]" Oscher, 452 Fed. Appx. at 862 (citing In re S. Atl. Fin. Corp., 767 F.2d 814, 819 (11th Cir. 1985), and that "[a]mendments asserting deficiency claims are among those usually allowed[,]" id. (citing In re Haack, 165 B.R. 501, 504 (Bankr. M.D. Fla. 1994)).

8

> "Ultimately, an amendment filed after the bar date is permitted only where the original claim provided notice to the court . . . that it was the creditor's intent, expressed in the original claim, to hold the estate liable for the claim later set forth in the amendment."

[Dkt. No. 6] at 11 (citing Matthews, 313 B.R. at 493-94).

As appellees correctly respond, this language stems from In re Int'l Horizons, Inc., a case that involved an "informal claim where no formal proof of claim was ever timely filed[,]" [Dkt. No. 8] at 12 (citing Int'l Horizons, 751 F.2d 1213, 1216 (11th Cir. 1985)) (emphasis in original). By contrast, the facts at hand do not involve an informal claim, as appellees timely filed formal proofs of claims, which provided appropriate notice. See Mem. Op. at ¶¶ 30-31. Accordingly, the Court finds that the bankruptcy court did not abuse its discretion in allowing the amended claims.[6]

## C. Equitable Considerations

Appellants next argue that the bankruptcy court erred in finding that the amended 8-1 and 9-3 claims were not unduly prejudicial to the administration of the bankruptcy estate. In allowing the amended claims, the bankruptcy court considered the factors of "undue delay, bad faith, undue prejudice and futility of any proposed amendments" as required by Fed. R. Civ. P. 15. Mem. Op. at 9. Specifically, the bankruptcy court found that there was no undue delay here because there was no deadline in either the Bankruptcy Code or in the Bankruptcy Rules for filing amendments to proofs of claim. Id. at 9-10. The bankruptcy court also found "no legally cognizable prejudice in allowing the [amended claims]," pointing to the fact that "[a]mendments for unsecured deficiency claims . . . always diminish creditors' expected returns," emphasizing

---

[6] Because the Court rejects the argument that a notice finding is required here, it need not address the parties' arguments as to whether the appellees provided sufficient notice in their original proofs of claims. See [Dkt. No. 6] at 12-14; [Dkt. No. 8] at 13-15; [Dkt. No. 9] at 4-6.

9

that the "creditors never had a legitimate expectation of a . . . return before approval of the Trustee's Final Report[,]" id. at 10, and observing that the "prospect of litigation over the validity and amount of an amended claim," although a legitimate concern, does not constitute grounds for finding undue prejudice, id. at 11-12.

Appellants challenge these findings. Regarding undue delay, appellants argue that appellees waited for over two and a half years before filing their amended claims, even though they had sufficient information to determine that their claims were under-secured when they filed their original claims. [Dkt. No. 6] at 13, 17. Although this may be true, appellants have no rebuttal to the bankruptcy court's finding that there was no time limit for filing amendments to timely-filed proofs of claim, and that the appellees filed the amended claims before the approval of the Trustee's Final Report.[7] In support of its finding, the bankruptcy court contrasted the Chapter 7 bankruptcy at issue here, to a Chapter 13 proceeding, in which the court often sets a deadline requiring that amended, unsecured deficiency claims be filed within a certain number of days after the surrender of the creditor's collateral. Mem. Op. at 9 n.7. And the bankruptcy court found only one bankruptcy court in the country with a local rule "requiring deficiency claims to be filed within 120 days of a relief from a stay order, 'but in no event later than the approval of a final report.'" Id. (quoting In re Epps, No. 16-33158, 2021 WL 268265, at * 2 (Bankr. W.D. Ky. Jan. 20, 2021)). Relevant here, and as discussed above, appellees filed the amended claims before the approval of the Trustee's Final Report. See id.

---

[7] Appellants' Reply Brief asserts the bankruptcy court's holding allows appellees "an absolute right to amend their claims virtually at any time[.]" and that this holding was unsupported by caselaw. [Dkt. No. 9] at 6. This argument is a mischaracterization of the bankruptcy court's decision, as it clearly stated that—despite the lack of deadline for filing claim amendments—it would have viewed the matter differently if the Trustee's Final Report had been approved and funds distributed. See Mem. Op. at 9-10.

10

As to undue prejudice, appellants argue that the creditors, such as appellant Gross, relied on the validity of the appellees' original claims as secured claims,[8] and were prejudiced because the amended claims would "reduc[e] the distribution to other creditors by approximately 80%[,]" which would be an "extraordinary" "impact." [Dkt. No. 6] at 17-18. Gross also argues that appellees should not have been permitted to file their amended claims in violation of the laches doctrine. [Dkt. No. 7] at 3-4. Appellants' arguments fail because relevant caselaw makes clear that the reduction in distribution to other creditors is an insufficient reason to bar a claim amendment, see, e.g., In re Parrott Broad. Ltd. P'ship, 518 B.R. 602, 612 (Bankr. D. Idaho 2014) (holding that the "prejudice of dilution of distribution is not an element in the test for allowing" an amended claim, but "is simply the natural consequence of such allowance,") (internal citations and quotations omitted), and that "prejudice requires more than simply having to litigate the merits of, or to pay, a claim—there must be some legal detriment to the party opposing[,]" Wall St. Plaza, LLC v. JSJF Corp. (In re JSJF Corp.), 344 B.R. 94, 102 (2006). The weakness of appellants' loss of distribution argument was highlighted by the bankruptcy court in its finding that "[t]he creditors never had a legitimate expectation of a 43% return before approval of the Trustee's Final Report." Mem. Op. at 10. In other words, it would not be reasonable to rely on any particular distribution until the Final Report was approved.[9]

---

[8] The Trustee alleges that some creditors, such as David Ansellem ("Ansellem"), decided to sell their claims; other creditors, such as Cedar Glade Capital LP, decided to buy claims; and still other creditors, such as Gross, decided not to sell their claims, in reliance on the originally-filed claims. [Dkt. No. 6] at 17; see also [Dkt. No. 7] at 3 (alleging that "Gross was prejudiced by reliance on the secured claims filed by G2 BVM and the [Gumbinner] Trust and their failure to timely and properly assert deficiency claims in that he rejected offers to sell his claim to third parties based on the proposed distributions set forth in the Trustee Final Report consistent with the timely claims as filed.").

[9] The bankruptcy court further explained its rejection of appellants' reliance argument by observing that "[c]laim values fluctuate throughout the course of a bankruptcy case and any

11

Gross's laches argument fails for a similar reason. Laches requires that "'the evidence must show both an unreasonable delay and prejudice to the defendant [or, in this case, creditor] from the delay.'" [Dkt. No. 7] at 4 (quoting IRS v. Vlavianos (In re Vlavianos), 71 B.R. 789, 794 (Bankr. W.D. Va. 1986) (alteration in original). The bankruptcy court fully addressed laches and rejected it on the grounds that there was no undue prejudice. Mem. Op. at 11; see also [Dkt. No. 8] at 18. As the bankruptcy court aptly stated: "The Court understands the claimants' disappointment, but disappointment does not rise to legal prejudice." Mem. Op. at 11.

### III. CONCLUSION

For the foregoing reasons, the Court finds that the bankruptcy court did not commit any error in its decision to allow the appellees' amendment of the claims at issue. Accordingly, it is hereby

ORDERED that the decision of the bankruptcy court be and is AFFIRMED.

The Clerk is directed to forward copies of this Order to the bankruptcy court and counsel of record, and to close this civil action.

Entered this 7th day of April, 2026.

Alexandria, Virginia

/s/ _____

Leonic M. Brinkema
United States District Judge

---

event in the case—the settlement of a fraudulent transfer, for example, or the allowance of a late or an amended claim—may cause significant fluctuations." Mem. Op. at 11 n.9.